No. 24-30645

# United States Court of Appeals for the Fifth Circuit

ABBVIE, INCORPORATED; ALLERGAN, INCORPORATED; DURATA THERAPEUTICS, INCORPORATED; ABBVIE PRODUCTS, L.L.C.; APTALIS PHARMA US, INCORPORATED; ALLERGAN SALES, L.L.C.; PHARMACYCLICS, L.L.C.,

*Plaintiffs-Appellants,*

v.

LIZ MURRILL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF LOUISIANA,

*Defendant-Appellee,*

LOUISIANA PRIMARY CARE ASSOCIATION,

*Intervenor Defendant-Appellee.*

On Appeal from the United States District Court for the Western District of Louisiana, Lafayette Division, No. 6:23-cv-01307-RRS-CBW, Judge Robert R. Summerhays

## REPLY BRIEF FOR APPELLANTS

ASHLEY C. PARRISH
JOHN D. SHAKOW
KING & SPALDING LLP
1700 PENNSYLVANIA AVENUE N.W.
SUITE 900
WASHINGTON, D.C. 20006
(202) 626-2627
aparrish@kslaw.com

MATTHEW S. OWEN, P.C.
  *Counsel of Record*
MEREDITH M. POHL
LUCAS H. FUNK
KIRKLAND & ELLIS LLP
1301 PENNSYLVANIA AVENUE N.W.
WASHINGTON, D.C. 20004
(202) 389-5000
matt.owen@kirkland.com

*Counsel for Appellants*
*Additional Counsel Listed on Next Page*

NICOLE BRONNIMANN
KING & SPALDING LLP
1100 LOUISIANA, SUITE 4100
HOUSTON, TX 77002
(713) 276-7402
nbronniman@kslaw.com

CHARLES M. JARRELL (NO. 17638)
GUGLIELMO, LOPEZ, TUTTLE,
HUNTER & JARRELL, L.L.P.
306 EAST NORTH STREET
P.O. BOX 1329
OPELOUSAS, LA 70571-1329
(337) 948-8201
cjarrell@glthj.com

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ ii

I.  Preemption ..................................................................... 1

    A.   The District Court Has Subject Matter Jurisdiction Over AbbVie's Preemption Claims. ......................................... 1

    B.   The 340B Program Preempts The Field. ................................ 4

    C.   Act 358 Is Conflict Preempted. .............................................. 8

    D.   Appellee's Other Constitutional Arguments Are Wrong ...... 11

II.  Takings .......................................................................... 15

    A.   Act 358 Constitutes A Physical Taking. .............................. 16

    B.   Act 358 Does Not Serve A Public Use. ................................ 22

    C.   AbbVie May Obtain Injunctive Relief On Its Takings Claim Even If Act 358 Serves A Public Use. ........................ 26

    D.   Act 358 Alternatively Constitutes A Regulatory Taking. .................................................................................. 29

III.  Intervention Was Improper. ........................................ 31

CONCLUSION ......................................................................... 32

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Center,*
575 U.S. 320 (2015) .......................................................... 11, 12, 13, 14

*Astra USA v. Santa Clara Cnty.,*
563 U.S. 110 (2011) ................................................................ 11, 14, 32

*Baker v. City of McKinney,*
84 F.4th 378 (5th Cir. 2023) ............................................................ 24

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341 (2001) .......................................................................... 6

*Calder v. Bull,*
3 U.S. 386 (1798) ............................................................................ 25

*Cedar Point Nursery v. Hassid,*
594 U.S. 139 (2021) ........................................................................ 17

*Deanda v. Becerra,*
96 F.4th 750 (5th Cir. 2024) .............................................................. 5

*Edelman v. Jordan,*
415 U.S. 651 (1974) ........................................................................ 28

*Elam v. Kansas City Southern Railroad,*
635 F.3d 796 (5th Cir. 2011) .............................................................. 2

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
537 F.3d 667 (D.C. Cir. 2008) ........................................................ 23

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
599 U.S. 166 (2023) .......................................................................... 7

*Hope Med. Grp. for Women v. Edwards,*
63 F.3d 418 (5th Cir. 1995) ............................................................ 15

*Hopwood v. Texas,*
   21 F.3d 603 (5th Cir. 1994) ................................................................ 32

*K.P. v. LeBlanc,*
   627 F.3d 115 (5th Cir. 2010) ................................................................ 3

*Kelo v. City of New London,*
   545 U.S. 469 (2005) ........................................................................... 23

*Knick v. Township of Scott,*
   588 U.S. 180 (2019) ..................................................................... 26, 27

*Lingle v. Chevron U.S.A. Inc.,*
   544 U.S. 528 (2005) ............................................................. 17, 18, 28

*Lofton v. McNeil Consumer & Specialty Pharms.,*
   672 F.3d 372 (5th Cir. 2012) ................................................................ 5

*McCulloch v. Maryland,*
   17 U.S. 316 (1819) ............................................................................... 7

*Moyle v. United States,*
   603 U.S. 324 (2024) ........................................................................... 15

*New Orleans & Gulf Coast Ry. v. Barrois,*
   533 F.3d 321 (5th Cir. 2008) ............................................................ 2, 3

*New Orleans Pub. Serv. v. United Gas Pipe Line,*
   732 F.2d 452 (5th Cir. 1984) .............................................................. 32

*NiGen Biotech v. Paxton,*
   804 F.3d 389 (5th Cir. 2015) ........................................................... 3, 28

*Novartis Pharms. Corp. v. Johnson,*
   102 F.4th 452 (D.C. Cir. 2024) ........................................................... 32

*PhRMA v. Morrisey,*
   760 F. Supp. 3d 439 (S.D. W.Va. 2024) .............................................. 10

*Planned Parenthood of Houst. & Se. Tex. v. Sanchez,*
   403 F.3d 324 (5th Cir. 2005) ................................................................ 2

*Quern v. Jordan,*
440 U.S. 332 (1979) ................................................................ 28

*Shaw v. Delta Air Lines,*
463 U.S. 85 (1983) .................................................................... 1

*Sheetz v. Cnty. Of El Dorado,*
601 U.S. 267 (2024) ........................................................ 22, 23

*Singleton v. Kentucky,*
843 F.3d 238 (6th Cir. 2016) ................................................ 15

*Thompson v. Consol. Gas Utils. Corp.,*
300 U.S. 55 (1937) ................................................................ 26

*Townsend v. Swank,*
404 U.S. 282 (1971) ................................................................ 7

*Tucker v. St. Bernard,*
2010 WL 3283093 (E.D. La. Aug. 17, 2010) ........................ 28

*Virginia Off. for Prot. & Advoc. v. Stewart,*
563 U.S. 247 (2011) ................................................................ 3

*Wallace v. Edwards,*
30 F.3d 1493 (5th Cir. 1994) ................................................ 29

*Williams v. Homeland Ins. Co. of New York,*
18 F.4th 806 (5th Cir. 2021) ................................................ 23

*Wos v. E.M.A. ex rel. Johnson,*
568 U.S. 627 (2013) ........................................................ 4, 5, 8

*Wyeth v. Levine,*
555 U.S. 555 (2009) ................................................................ 5

**Statutes**

28 U.S.C. § 1331 ...................................................................... 2

28 U.S.C. §1343(a)(3) .............................................................. 3

28 U.S.C. §1367(a) ........................................................... 4

42 U.S.C. §256b(a) .................................................. 4, 14, 18

42 U.S.C. §256b(d) ....................................................... 6, 14

La. R.S. 13:5106 ............................................................. 29

La. R.S. 19:1 ................................................................... 27

La. R.S. 19:2 ................................................................... 27

La. R.S. §§40:2882 .......................................................... 11

La. R.S. §40:2884(A) ..................................... 8, 9, 16, 24

La. R.S. § 40:2885 .......................................................... 32

La. R.S. § 51:1407 .......................................................... 32

La. R.S. § 51:1417 .......................................................... 32

## Regulations

61 Fed. Reg. 43549 (Aug. 23, 1996) ....................... 30

75 Fed. Reg. 10272 (Mar. 5, 2010) .......................... 30

89 Fed. Reg. 28643 (Apr. 19, 2024) ......................... 6

## INTRODUCTION

The Attorney General ("AG") spends much of its brief running away from the district court's opinion and its own arguments below. But the AG's new arguments are wrong, and its cursory attempt to rescue the district court's opinion fails. The judgment should be reversed.

## I.    PREEMPTION

### A.    The District Court Has Subject Matter Jurisdiction Over AbbVie's Preemption Claims.

Contrary to the AG's newfound suggestion, the district court had subject-matter jurisdiction over AbbVie's preemption claim. It is well-established that plaintiffs may invoke federal question jurisdiction through a claim for injunctive relief that seeks to restrain state officials from enforcing unconstitutional laws. *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."). That includes suits alleging a state law is preempted under the Supremacy Clause. *Id.* ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the

federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008) ("*Shaw*, among the progeny of *Ex parte Young*, clearly establishes a federal right of action against 'state officials' to enjoin the enforcement of preempted state regulations. This cause of action against state officials is an affirmative federal claim that can form the basis for federal jurisdiction."); *Planned Parenthood of Houst. & Se. Tex. v. Sanchez*, 403 F.3d 324, 331 (5th Cir. 2005) ("It is well-established that the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief."). Accordingly, AbbVie's suit for declaratory and injunctive relief against the Louisiana Attorney General to enjoin enforcement of a preempted state law is clearly within the federal question jurisdiction of the federal courts. [1]

---

[1] The AG cites *Elam v. Kansas City Southern Railroad*, 635 F.3d 796 (5th Cir. 2011), but that case considered only whether preemption asserted as a defense to a state-law claim creates federal-question jurisdiction. The plaintiffs sued under state law and the defendant-railroad company asserted complete preemption and removed to federal court on that ground. *Id.* at 802. In concluding that federal-question jurisdiction existed, this Court explained that preemption asserted as a defense creates a federal question under the well-pleaded complaint rule only when the defendant asserts *complete* preemption. *Id.* at 802-803. So a defendant could not remove a case to federal court by asserting conflict or field preemption. *Id.* at 803. That is completely

Even if AbbVie could not invoke federal question jurisdiction over its obviously federal claims, AbbVie could invoke diversity jurisdiction. While state officials sued in their official capacity typically represent the State itself, things change when the suit "seeks prospective, injunctive relief from a state actor ... based on an alleged ongoing violation of the federal constitution." *NiGen Biotech v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015); *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-55 (2011). Under those circumstances, the state official "is stripped of his official clothing and becomes a private person subject to suit," *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)—and thus a citizen for purposes of diversity jurisdiction.[2]

Even if the federal courts lacked original jurisdiction over AbbVie's federal preemption claims, the district court could still exercise

---

consistent with the rule that governs this case: a suit against "'state officials' to enjoin the enforcement of preempted state regulations" ***does*** state "an affirmative federal claim that can form the basis for federal jurisdiction." *New Orleans*, 533 F.3d at 329-30.

[2] The AG also contends AbbVie cannot assert jurisdiction for its preemption claims on 28 U.S.C. §1343(a)(3), which provides original jurisdiction in federal courts for actions to "redress the deprivation … of any right, privilege or immunity secured by the Constitution" or by any federal civil rights statute. But §1343(a)(3) is a jurisdictional hook for AbbVie's takings claims, not its preemption claims.

supplemental jurisdiction by virtue of AbbVie's Takings Claims. The AG does not dispute that AbbVie's takings claim could serve as a "potential basis for original federal question jurisdiction." Appellee Br. 22. And no doubt, AbbVie's preemption claims are "so related" to its takings claims that "they form part of the same case or controversy under Article III." 28 U.S.C. §1367(a). In short, the district court properly exercised jurisdiction over all AbbVie's claims.

## B. The 340B Program Preempts The Field.

The 340B program occupies the exclusively federal field of 340B pricing and eligibility. The program requires manufacturers to "offer" their drugs at particular prices to certain covered entities, as provided by statute. 42 U.S.C. §256b(a)(1). This entire exchange—the types of drugs, terms of the offer, ceiling price, and covered entities—is a creature of federal law. There is no question that Act 358 affects this exchange.

The AG tries to escape that conclusion, but it may not "evade the pre-emptive force of federal law by resorting to creative statutory interpretation or description at odds with the statute's intended operation and effect." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013). Instead, preemption analysis "requires consideration of what the

state law in fact does, not how the litigant might choose to describe it." *Id.* at 637.

In the face of Act 358's intrusion into an exclusively federal sphere, the AG makes a series of arguments that artificially limit Act 358's reach or rewrite it altogether. None works.

The AG and Intervenors argue that a presumption against preemption should apply. Appellee Br. 23; Intervenor Br. 17-18. The district court did not rely on any such presumption, and this Court should not, either. For starters, this Court has questioned the continued viability of a "presumption against preemption." *Lofton v. McNeil Consumer & Specialty Pharms.*, 672 F.3d 372, 379 (5th Cir. 2012).[3] This Court has also recognized that any presumption against preemption is only applicable to "areas of law traditionally reserved to the states." *Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024). But Louisiana's historical police powers cannot cover the federal 340B program, which is hardly a generation old, and which states have never been in the business

---

[3] At least three Justices of the Supreme Court have questioned whether any presumption against preemption applies in conflict preemption cases. *Wyeth v. Levine*, 555 U.S. 555, 623-24 (2009) (Alito, J., with Roberts, C.J., and Scalia, J., dissenting).

of regulating because of its "inherently federal" "character." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).

Louisiana's own admissions confirm its law is a direct regulation of a federal program. In answering AbbVie's complaint, the AG admitted no fewer than 15 times that Louisiana's issue with contract pharmacy policies is the State (incorrectly) believes they "result[] in overcharging covered entities for 340B drugs." ROA.155-ROA.193 (¶¶7, 62, 64-67, 71, 72, 74, 76, 98-100, 131). In other words, "overcharging" for 340B drugs **is the issue** Act 358 aims to remedy. The AG therefore already admitted that Louisiana's law intends to regulate pricing—an "overcharge" is just a pricing dispute by another name. Indeed, that exactly mimics the language of the federal statute and the relevant regulations. The statute requires the Secretary to "establish and implement an administrative process for the resolution of claims by covered entities that have been overcharged for drugs purchased under this section." 42 U.S.C. §256b(d)(3)(A). The Secretary has followed that instruction. A complete administrative dispute resolution process exists and explicitly provides the exclusive forum for the "overcharging" disputes Louisiana admitted Act 358 regulates. 89 Fed. Reg. 28643, 28645 (Arp. 19, 2024) (explaining

that the "ADR process" is reserved for "claims for overcharge, diversion or duplicate discounts"). By its own account, then, Louisiana's Act 358 regulates pricing "overcharges," disputes fully within the exclusively federal 340B field.

The AG next claims that the 340B program is "optional," which, they say, lessens its preemptive value. Appellee Br. 26-27. Even assuming *arguendo* that 340B really is "optional," the AG provides no binding authority for the proposition that "optional" federal programs are exempt from the Supremacy Clause. And the cases the AG cites are inapposite. *E.g.*, *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172 (2023) (holding that the Federal Nursing Home Reform Act, a Spending Clause statute, "unambiguously create[s] § 1983-enforceable rights"); *Townsend v. Swank*, 404 U.S. 282, 284-85 (1971) (holding that the Social Security Act preempted contrary state law). Further, even if a federal program is optional, there is no reason that a ***state*** can modify the terms of that program. Congress has created the "field" of 340B, and states may not regulate what Congress has made. *McCulloch v. Maryland*, 17 U.S. 316, 425-31 (1819).

The AG denies Act 358 expands the list of entities eligible for 340B pricing, but that is wrong. While the AG claims only "340B entities" remain eligible for 340B pricing, Appellee Br. 30, courts "consider[] what the state law in fact does" in assessing preemption claims. *Wos*, 568 U.S. at 636. And Act 358 prohibits manufacturers from "deny[ing], restrict[ing], prohibit[ing], or otherwise interfere[ing] with" the "acquisition of a 340B drug by … a ***pharmacy*** that is under contract with a 340B entity." La. R.S. §40:2884(A). So the law requires AbbVie to distribute its drugs at 340B prices to contract pharmacies.

Finally, the AG reassures the Court that just because Act 358 "references the 340B Program" it does not create a preemption problem. Appellee Br. 33-34. But Act 358's citations to federal law demonstrate that Act 358 depends upon, and operationally modifies, the federal scheme. Indeed, Act 358 cannot exist apart from federal law. Louisiana is thus inserting itself into a federal drug pricing program and changing the terms of that program.

## C.    Act 358 Is Conflict Preempted.

Act 358 conflicts with the federal 340B program in two ways: the law (1) forces manufacturers to provide its drugs to entities not

enumerated in the statute and (2) subjects manufacturers to a parallel enforcement scheme.  The AG's responses are not convincing.

**1.**  Act 358 requires manufacturers to provide their drugs at the discounted 340B price to entities not enumerated in the federal statute.  Because Congress included a circumscribed list of entities that may insist upon the 340B "offer," Louisiana's attempt to expand that list to contract pharmacies disturbs Congress's design.

Louisiana says the "same universe of covered entities that purchased such drugs at such discounts before Act 358" will do the same "after Act 358."  Appellee Br. 36.  That is beside the point.  The text of Act 358 prohibits manufacturers from "deny[ing] … the acquisition of" their drugs by contract pharmacies, La. R.S. §40:2884(A), who are not listed as covered entities under Section 340B.  And under its current policy, ***AbbVie would not provide its discounted drugs*** to an unlimited number of contract pharmacies.  By forcing AbbVie to sell its drugs under circumstances it ordinarily would not—and that federal law does not require—Act 358 expands drug manufacturers' obligations under Section 340B.

**2.** Act 358 interferes with the enforcement scheme laid out in the 340B statute, which Congress intended as the program's exclusive enforcement mechanism. Appellant Br. 39-41. The AG imagines scenarios where either the 340B statute alone or Act 358 alone "provides recourse." Appellee Br. 38-39. But that ignores that laws like Act 358 "operate[] as a means to enforce the 340B ceiling price." *PhRMA v. Morrisey*, 760 F. Supp. 3d 439, 456 (S.D. W.Va. 2024). That is because Act 358 boils down to a requirement that manufacturers supply their drugs to contract pharmacies ***at the 340B price***. *Id.* at 455 ("Put another way, the system is about delivery *at a given price*, not delivery *per se*."). Thus, by enforcing Act 358 against manufacturers who decline to transfer 340B drugs to unlimited contract pharmacies, Louisiana is really requiring the 340B price under circumstances not required by federal law.

The AG says these enforcement schemes can simply run on parallel tracks, but the tracks will inevitably, and impermissibly, cross. Any Act 358 enforcement action in a state proceeding would call upon the State to "determine certain federal questions," which raise the "concern for differing adjudications by differing sovereigns." *Morrisey*, 760 F. Supp.

10

3d at 459. That is exactly what Congress sought to avoid by centralizing administration of the 340B program. *Astra USA v. Santa Clara Cnty.*, 563 U.S. 110, 120 (2011) (recognizing Congress's purpose to avoid "conflicting adjudications" in 340B). And ultimately, neither the AG nor Intervenors can dispute that Act 358 uses terms—such as "340B drug" and "340B entity"—that are creatures of federal law. *See* La. R.S. §§40:2882(1), (2). So any state enforcement proceeding under Act 358 would require the state tribunal to interpret federal law. That undermines Congress's purpose in administering the 340B program "harmoniously and on a uniform, nationwide basis." *Astra*, 563 U.S. at 120.

## D.    Appellee's Other Constitutional Arguments Are Wrong.

The AG volleys two other constitutional arguments against AbbVie's preemption claim. But neither lands.

**1.** AbbVie's equitable action to enjoin Louisiana officials from enforcing an unconstitutional state law does not exceed the judicial power. The AG relies on *Armstrong v. Exceptional Child Center,* 575 U.S. 320 (2015), but that case gives them no help. *Armstrong* considered whether the Supremacy Clause provided a private right of action to

11

enforce the Medicaid Act against contrary state Medicaid regulations. *Id.* at 323-24. The Court held the Supremacy Clause did not provide a freestanding cause of action to enforce federal law against state officials. Instead, the "ability to sue to enjoin unconstitutional actions by state and federal officials" stems from the inherent equitable powers of the federal courts. *Id.* at 326-27. But the Court went on to hold that the plaintiffs could not sue in equity to enjoin Idaho because the Medicaid Act "implicitly precludes private enforcement." *Id.* at 328. Congress provided a different remedy "for a State's failure to comply with Medicaid's requirements"—the withholding of Medicaid funds by HHS. *Id.*

*Armstrong* is thus inapplicable for two reasons:

**First,** *Armstrong* explicitly recognized the cause of action AbbVie brings here—an equitable action against state officials to enjoin enforcement of a preempted state law. *See id.* at 326 ("[A]s we have long recognized, if an individual claims federal law immunizes him from state regulation, ***the court may issue an injunction upon finding the state regulatory actions preempted*.***"); *id.* at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the

creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").

**Second,** unlike the Medicaid Act provisions in *Armstrong*, Section 340B does not "foreclose" equitable relief against Louisiana. An equitable action was unavailable in *Armstrong* because the Medicaid Act already provided the "sole remedy" for a state's breach of its obligations under the Medicaid Act—the withholding of funds. *Id.* at 328. That is not the case here: The 340B program provides AbbVie **no remedy** for Louisiana's unconstitutional incursion into that program.

The AG tries to fit AbbVie's lawsuit into the *Armstrong* framework by claiming AbbVie is seeking to "enforce the federal government's conditions … against the States." Appellee Br. 53. But unlike in *Armstrong*, the States themselves play no role in the 340B program—they do not receive funding from the federal government and do not enter into agreements with the federal government. Louisiana argues that States' participation in Medicaid "implicates" the 340B program, and therefore they could somehow be subject to an enforcement action under the program. Appellee Br. 45-46. But as is clear from the statutory text, States have no role in the 340B program except to the extent they own or

13

operate covered entities.  42 U.S.C. §256b(a)(4)(L).  And further, the 340B

program's ADR process is for resolution of "claims by covered entities

that they have been overcharged [by manufacturers] … and claims by

manufacturers" against covered entities for duplicate discounts or

diversion.  42 U.S.C. §§256b(d)(3), (a)(5)(A), (a)(5)(B).  Nowhere does the

340B program contemplate ADR claims by manufacturers against States

for unconstitutional regulations—and the AG cites no authority even

suggesting such a claim could be brought.

Thus, permitting an equitable action to enjoin ***State officials*** from

enforcing unconstitutional state modifications to the 340B program

would hardly "undermine[]" the "alternative remedial scheme" created

by Congress.  Appellee Br. 48-49.  The ADR process is meant to resolve

claims of "overcharges and other violations of the discounted pricing

requirements," *Astra*, 563 U.S. at 122; it is not a forum for adjudicating

the constitutionality of State statutes.  Unlike the plaintiffs in *Armstrong*

who ***could*** petition the Secretary to sanction the offending States by

withholding funds, AbbVie ***could not*** seek any relief against the AG

through 340B's enforcement mechanism.

14

**2.** The AG also argues that because the 340B program is enacted through Congress's Spending Clause authority, it cannot preempt a contrary state law that seeks to alter the program's terms. Appellee Br. 49-54. For that novel claim, the AG relies upon a series of non-precedential concurring and dissenting opinions in a case that the Supreme Court dismissed as improvidently granted. *Moyle v. United States*, 603 U.S. 324, 325 (2024) (per curiam). This Court has never accepted the argument that federal statutes enacted under the Spending Clause cannot preempt contrary state law. Indeed, this Court and other courts have held federal law enacted under Congress's spending power *do* preempt contrary state law. *See Hope Med. Grp. for Women v. Edwards*, 63 F.3d 418, 423 (5th Cir. 1995); *Singleton v. Kentucky*, 843 F.3d 238, 240 (6th Cir. 2016). This Court should adhere to that precedent.

## II.   TAKINGS

The AG's takings defense is that this Court need not look too close at Act 358 or think too hard about its constitutional muster. Rather than discuss the real-world impact of Act 358, the AG offers conclusory assertions about the law's purpose and contrived descriptions of its

15

function.  And rather than provide this Court with reasons to uphold the law as applied to AbbVie, the AG asks for deference to Louisiana's determination that Act 358 serves a public purpose.  The AG works so hard to avoid meaningful discussion on the merits of the Fifth Amendment because Act 358 cannot survive proper scrutiny.  It is an unprecedented claim to State power in that it leverages a national program to compel private-to-private transfers of property under a State program.

### A.    Act 358 Constitutes A Physical Taking.

The AG argues there is no physical taking because AbbVie "receives money" for the drugs that Act 358 compels it to transfer.  Appellee Br. 59.  That ignores the text of the Louisiana statute, the reality of the 340B program, and controlling precedent.

Start with the text.  Under Act 358, AbbVie may not "deny, restrict, prohibit, or otherwise interfere with" the "acquisition of a 340B drug by, or delivery of a 340B drug to" a contract pharmacy.  La. R.S. §40:2884(A).  Put simply, that means AbbVie may not prevent a contract pharmacy from taking possession of its personal property when a contract pharmacy or its covered entity partner demand.  On the ground, the

16

Louisiana law means when contract pharmacies (and the third-party administrators that run the 340B line of their business) place orders for heavily discounted drugs, AbbVie will have no choice but to accept the order and provide the discounted drugs to the contract pharmacy. ROA.943 (¶¶9, 10). The pharmacies will then take possession of the drugs, merge them into their general inventory, and dispense them to customers at ordinary commercial prices. ROA.941-ROA.944 (¶¶4-8, 11, 13).

That Act 358 directs AbbVie to convey its personal property to another private party—even if for *de minimis* compensation—amounts to a physical taking. Through the state law, Louisiana physically appropriates the property of one party for the benefit of a third party. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-49 (2021). Here, those third parties are for-profit pharmacies and their 340B administrators— effectively requiring AbbVie to fund another for-profit industry. That constitutes a per se taking because AbbVie "suffer[s] a permanent physical invasion of [its] property." *Lingle*, 544 U.S. at 538. That

"physical invasion" amounts to a taking "however minor" it may be—although the invasion here is not minor. *Id.*[4]

The AG's next point is that AbbVie "forfeits its property interest" in the drugs by participating in the 340B program. Appellee Br. 59. That reveals the AG's cramped understanding of how the Program actually functions. By participating in the federal 340B program, manufacturers agree to make their drugs available at specific prices to covered entities. 42 U.S.C. §§256b(a)(1), (a)(4). The effect of the 340B statute is that covered entities may always insist upon the 340B price when purchasing drugs. Manufacturers do not go around affirmatively extending discrete offers to covered entities or contract pharmacies. ROA.287-ROA.288 (¶¶8, 13); ROA.292-ROA.294 (¶¶5, 7-11); ROA.942 (¶9). Rather, covered entities generally have purchasing accounts with manufacturers and their wholesalers and distributors. ROA.287-ROA.288 (¶¶8, 13); ROA.292-ROA.294 (¶¶5, 7-11); ROA.942 (¶9). And under AbbVie's

---

[4] In support of this argument that Act 358 is not a physical taking because it does not completely deprive AbbVie of the value of its property, Intervenors point to AbbVie's revenue. Intervenor Br. 47. AbbVie is not aware of any precedent supporting the notion that the presence of a physical taking turns on the target's financial standing.

policy, contract pharmacies can use those accounts at any time to submit an order for 340B-priced drugs, which AbbVie is bound to honor, subject to compliance with the non-price terms that it may include. ROA.287-ROA.288 (¶¶8, 13); ROA.292-ROA.294 (¶¶5, 7-11); ROA.942 (¶9). Thus, the 340B "offer" flowing from participating manufacturers to covered entities exists on a continuing basis, and without any affirmative action from the manufacturers.

Enter Act 358, which requires AbbVie to transfer 340B drugs directly to contract pharmacies on an unlimited basis. Although the AG claims its new law kicks in "only after" AbbVie "forfeits its property interest in the drugs to the 340B covered entity that has accepted its offer," Appellee Br. 59, that is a fiction. There is no period preceding the "offer" to the covered entity, during which AbbVie can simply decline to make an initial offer and thereby avoid the coercive effects of Act 358. The 340B offer is *always* held open to *all* covered entities—and now under Act 358, *all* contract pharmacies. And those are not terms AbbVie would otherwise include in its offer, but rather terms Act 358 compels.

The AG next sidesteps the voluntariness inquiry by explaining why **the federal 340B program** is voluntary. Appellee Br. 60-61. But the

question is whether ***Act 358's*** regime is voluntary. And for that, the AG has no answer. While manufacturers may opt out of the 340B program on a nationwide basis, there is no mechanism for them to opt out of Act 358 or out of 340B in just Louisiana.[5] Thus, the only refuge for the AG would be to say manufacturers can simply opt out of 340B, and therefore opt out of Medicaid and Medicare Part B as well. But if the AG's theory is accepted, it would permit the state to legislate away the constitutional rights of any federal-program participant—and pretend the participant has "voluntarily" agreed to that—provided the regulated party could theoretically avoid the state abridgment of their rights by withdrawing from *federal* programs that do not impose the conditions the state wishes to require.

The AG next relies on the district court's mistaken conclusion that "Act 358 does not compel direct, confiscatory sales to private pharmacies" because the drugs are "sold to covered entities," not pharmacies.

---

[5]  Intervenors make the same mistake in arguing there is no physical taking because "AbbVie voluntarily participates in the 340B Program." Intervenor Br. 42-43. It is telling that neither the AG nor Intervenors can offer any theory—even an implausible one—for how ***Act 358***—not the ***340B Program***—is voluntary.

Appellee Br. 61. That is not quite right. Often, in a contract pharmacy transaction, the pharmacy or its 340B administrator places an order for 340B drugs with a wholesaler or distributor that then transfers the drugs directly to the contract pharmacy. ROA.941-ROA.943 (¶¶5, 9-10). The only involvement from the covered entity is: (a) the contract pharmacy uses the covered entity's purchasing account to access the discounted prices and (b) after the contract pharmacy sells the discounted drugs at commercial prices, it shares the arbitrage profits with the covered entity. So in the strict sense, the purchase is "in" the covered entity's name. Yet for all practical purposes, it is often the contract pharmacy purchasing, receiving, selling, and profiting from the drugs.[6]

---

[6]  Intervenors make the bold argument that even if contract pharmacies did take title to the drugs Act 358 compels AbbVie to transfer, "such transfers would not constitute an unconstitutional taking but instead would be prohibited diversion under the 340B statute." Intervenor Br. 46. Intervenors do not explain why a violation of the Takings Clause and of the 340B program cannot exist at the same time. And it is unclear what, if anything, Intervenors think would qualify as a taking—since they would not grant that a physical taking exists even where a State *does* compel the transfer of title from one party to another.

**B.    Act 358 Does Not Serve A Public Use.**

The AG says Act 358 "safeguards" access to medications "for low-income and rural communities." Appellee Br. 54-55. The only support the AG cites for this proposition is testimony from Louisiana House and Senate Committee hearings that discuss the benefits of the 340B program, not Act 358. *See* ROA.608. And the AG does not appear to dispute that after manufacturers transfer 340B drugs to pharmacies, they are sold to 340B patients and non-patients alike. ROA.1131 (¶5); ROA.941-ROA.942 (¶¶4, 5). Neither does the AG meaningfully dispute that the profits contract pharmacies reap pad the bottom line of the pharmacies and their partners. *See* ROA.80-ROA.87 (¶¶39, 57, 58, 60, 61, 63); ROA.276-ROA.278 (¶¶42, 44, 47, 52).

The AG's conclusory defense of Act 358's "public use" asks this Court to defer to the legislature rather than question the "wisdom" of the State law. Appellee Br. 55. That is at odds with both the historical and current view of the judicial function in takings cases: "[S]pecial deference for legislative takings would have made little sense historically, because legislation was the conventional way that governments exercised their eminent domain power." *Sheetz v. Cnty. Of El Dorado*, 601 U.S. 267, 277

(2024).    Indeed, "[f]ar from supporting [the] deferential view" of legislative takings, "history shows that legislation was a prime target for scrutiny under the Takings Clause." *Id.* at 277-78.

Relying on *Kelo v. City of New London*, 545 U.S. 469 (2005), the AG dismisses the original meaning of the Takings Clause as "academic criticisms" and "founding accounts." Appellee Br. 56.  But the AG makes no effort to explain why *Kelo* controls the outcome here.  *Kelo* concerned a "'carefully considered' development plan" to create jobs and generate tax revenue for a "distressed" area that required condemning certain real property.  545 U.S. at 477-78, 484.  Here, the State will leverage a federal program to compel the transfer of personal property to private, for-profit entities with no corresponding requirement that the profits be passed onto the public.  *Kelo* says nothing about those facts.  And any doubt about *Kelo*'s application here should be resolved in the direction of the original meaning of the takings clause.  *See Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 818 (5th Cir. 2021) (Ho, J., concurring) ("Our duty is to apply the Constitution—not extend precedent."); *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) ("We should resolve questions about the scope of [Supreme

Court] precedents in light of and in the direction of the constitutional text and constitutional history."). That approach would be consistent with this court's previous applications of the takings clause. *See Baker v. City of McKinney*, 84 F.4th 378, 383 (5th Cir. 2023) ("[H]istory and tradition, including historical precedents, are of central importance when determining the meaning of the [federal] Takings Clause."). AbbVie's discussion of the clause's original meaning is thus more than "academic criticism[]." Appellee Br. 56. Those authorities go directly to the meaning of the text this Court is applying to this dispute.

Next, to avoid *Kelo*'s language condemning private-to-private transfers, the AG reprises its conclusory assertion that "340B drugs are intended to reach poor and rural patients who need them" and "Act 358 bars these manufacturers from preventing such delivery through contract pharmacies." Appellee Br. 56-57. That *ipse dixit* is disconnected from the text and effect of Act 358. As for the text, Act 358 sweeps much broader than that: it says AbbVie may not "deny, restrict, prohibit, or otherwise interfere with" the "acquisition of a 340B drug by, or delivery of a 340B drug to" a contract pharmacy. La. R.S. §40:2884(A). As for the effect, the AG does not refute the evidence that contract pharmacies use

340B drugs to increase their profits, ROA.71 (¶5), ROA.277 (n.37), ROA.941-ROA.942 (¶¶4-5), most covered entities "rarely" pass on the 340B discount to their patients *if they do at all*, ROA.85-ROA.86 (¶60), ROA.1075, ROA.1070-ROA.1071, ROA.278 (¶52), ROA.975, and charity care has actually decreased rather than increased with the contract pharmacy explosion, ROA.278 (¶52), ROA.1119-ROA.1122, ROA.1139, ROA.86-ROA.87 (¶¶62-63).  The AG clings to the fiction that compelling transfers to contract pharmacies benefits needy patients but has offered this Court no reason based in the record for doing so.[7]

Finally, the AG's admission that the State ***is*** compelling AbbVie to pad the profits of for-profit retail pharmacies, Appellee Br. 57, demonstrates that the AG's version of a "public purpose" test has no limiting principle.  The Takings Clause does not tolerate legislative action that takes property from one private person and hands it to another.  *See Calder v. Bull*, 3 U.S. 386, 388 (1798) (Chase, J.).  This

---

[7]   If this Court believes there is a factual dispute on this point, it should reverse and remand for further fact-finding.  Other similar cases challenging similar state laws are pending around the country; and in those cases, discovery has proceeded on just such questions as these.

Court should not endorse such an unbounded understanding of that clause.[8]

Because Act 358 amounts to a private taking, no "just compensation" could cure it, and injunctive relief is both available and appropriate. *Thompson v. Consol. Gas Utils. Corp.*, 300 U.S. 55, 80 (1937). Further, and as discussed below, there is no way that AbbVie could obtain monetary relief from the State in any event. *See infra* §II.C.

### C.   AbbVie May Obtain Injunctive Relief On Its Takings Claim Even If Act 358 Serves A Public Use.

The AG argues Act 358 advances a public use, so "'just compensation' is the exclusive remedy under the Takings Clause" and "Louisiana law makes just compensation remedies available." Appellee Br. 57-58. Both assertions are incorrect.

Injunctive relief is available even for takings that serve a public use. The AG's own case, *Knick v. Township of Scott*, 588 U.S. 180 (2019),

---

[8]   In support of the public use argument, Intervenors rely on the *Slaughterhouse Cases* for the proposition that "private interests in property" are "subservient to the general interests of the community." Intervenor Br. 51-52. Whatever the merits of that theory of private property, it cannot overtake the plain meaning of the Takings Clause, which prohibits takings that do not supply just compensation and do not directly serve a public use.

confirms this.  The Court's opinion in *Knick* explained a takings clause violation is complete "when the government takes [the plaintiff's] property without paying for it" and "the property owner may sue the government at that time in federal court."  *Id.* at 185, 189.  In other words, "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner."  *Id.* at 190.  Thus, "[t]he fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right"—that is, "the Fifth Amendment right … allows the owner to proceed directly to federal court under § 1983."  *Id.* at 191.

That said, the *Knick* court did say that injunctive relief is generally unavailable when the offending state provides monetary relief.  *See id.* at 195, 201-02.  And the AG tries to shoehorn this case into that category by arguing—for this first time in this litigation—"Louisiana law makes just compensation remedies available."  Appellee Br. 57-58.  But the AG's purported remedy is La. R.S. 19:1 *et seq.*, which outlines the procedures for an expropriation suit, *e.g.*, La. R.S. 19:2, and applies only to ***immovable***,     not     personal,     property,     La.     R.S.     19:1;

27

*Tucker v. St. Bernard*, 2010 WL 3283093, at *3 (E.D. La. Aug. 17, 2010) (interpreting Louisiana law to conclude that "'movables' are not compensable under Louisiana expropriation law"). There is no indication that AbbVie could utilize this scheme to obtain compensation.[9]

For these reasons, the AG's claim that AbbVie has "commandeer[ed] the Takings Clause" and neglected state remedies and §1983, Appellee Br. 57-58, is bizarre. Louisiana law provides no remedy for the personal property taking Act 358 achieves. And the AG's intimation that AbbVie could have sought monetary relief under §1983 is also wrong: Sovereign immunity would bar AbbVie from obtaining monetary relief through §1983 from the State. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *NiGen*

---

[9] *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005), also does not help the AG's argument. That case rejected a rule that a taking occurs where a regulation of private property "does not substantially advance legitimate state interests." *Id.* at 531-32. The Court explained: "[T]he gravamen of Chevron's claim is simply that Hawaii's rent cap will not actually serve the AG's legitimate interest in protecting consumers against high gasoline prices" and therefore was "fundamentally arbitrary and irrational." *Id.* at 544. The Court said: "Whatever the merits of that claim, it does not sound under the Takings Clause." *Id.* That Chevron's claim in that case did not "sound under the Takings Clause" does not mean equitable relief is unavailable here.

*Biotech*, 804 F.3d at 393-94; *Wallace v. Edwards*, 30 F.3d 1493 (5th Cir. 1994); La. R.S. 13:5106.  So AbbVie brought a §1983 claim predicated on the Takings Clause and seeking injunctive relief—the only remedy available.

**D.    Act 358 Alternatively Constitutes A Regulatory Taking.**

The AG's regulatory takings argument rests on the same creative framing of Act 358.  It says AbbVie "offers to sell the drugs; it is paid for the drugs; it lacks a property interest by the time Act 358 kicks in; and its participation in the 340B program is entirely voluntary."  Appellee Br. 63.  The above discussion reveals why that does not accurately describe the transactions that Act 358 compels.

None of the AG's other arguments help its cause.  First, the AG argues there is no regulatory taking because Act 358 is "limited in geography and scope."  *Id.*  It is unclear what that means or why it matters.  In support, the AG cites the district court opinion, but that opinion contains no corresponding discussion of the "geography" or "scope" of Act 358 for purposes of a regulatory taking—nor does the opinion describe any basis those factors have in precedent.  *See id.* Neither does the AG appear to dispute Act 358 will compel AbbVie to

transfer a great deal more steeply discounted drugs to an unlimited number of contract pharmacies in Louisiana, which will come at a significant cost to AbbVie. ROA.944 (¶14).

The AG next claims Act 358 has not disturbed AbbVie's investment-backed expectations because "contract pharmacies have been a part of the 340B investment calculus" for "the last decade." Appellee Br. 63. Yet for nearly the first two decades of the program, HRSA only recommended manufacturers transfer discounted drugs to one contract pharmacy per covered entity. 61 Fed. Reg. 43549, 43550-55 (Aug. 23, 1996). That did not change until 2010, when HRSA recommended that manufacturers transfer their drugs to unlimited contract pharmacies. 75 Fed. Reg. 10272, 10273 (Mar. 5, 2010). And that did not come to a head until contract pharmacy numbers ballooned and HRSA took the position in 2020 that manufacturers must provide their discounted drugs to unlimited contract pharmacies. HHS, Off. of the Gen. Counsel, Advisory Opinion 20-06 on Contract Pharmacies under the 340B Program (Dec. 30, 2020), https://tinyurl.com/2ca6rmnm.

Finally, the AG resorts back to its conclusory assertion that Act 358 services the "public good." Appellee Br. 63. If by "public good" the AG

refers to the good of Fortune 500 retail pharmacies, then the AG is correct. *See* CVS Pharmacy 10-K (2022), at 22, https://tinyurl.com/mrykrxj8 (explaining that a reduction in contract pharmacy arrangements "could materially and adversely affect the Company"); Walgreens, Inc. 10-K (2022), at 28, https://tinyurl.com/4ks6mf3s (similar). But if by "public good" the AG refers to ordinary Louisianans, it enjoys no support in the record. Rather, the evidence demonstrates patients generally do not benefit from an increase in volume of contract pharmacy arrangements and, in fact, suffer. ROA.1131 (¶5); ROA.941-ROA.942 (¶¶4, 5); ROA.80, ROA.80-ROA.87 (¶¶39, 57, 58, 60, 61, 63); ROA.276-ROA.278 (¶¶42, 44, 47, 52). Act 358 does not aim at the public good—and the AG's halfhearted attempts to sanitize the law are unsuccessful.

## III.   INTERVENTION WAS IMPROPER.

Intervenor-Louisiana Primary Care Association defends its intervention by asserting an interest in "maintain[ing] protections for delivery of 340B drugs to contract pharmacies." Intervenor Br. 56. That admission confirms it lacks an interest in this litigation because "[w]hat is required is that the interest be one which the *substantive* law

recognizes as belonging to or being owned by the applicant." *New Orleans Pub. Serv. v. United Gas Pipe Line*, 732 F.2d 452, 464 (5th Cir. 1984). Yet covered entities have no private cause of action to enforce the 340B program, *Astra*, 563 U.S. at 113, neither can they enforce Act 358, La. R.S. §§ 40:2885, 51:1407, 51:1417. Nor do covered entities have a legally protectable interest in compelling manufacturers to transfer discounted drugs to contract pharmacies. *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 461 (D.C. Cir. 2024).

LPCA then sidesteps that it must make a heightened showing of inadequacy since the State is a party, *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994), by claiming that its interests "differ[]" from the AG because LPCA "seeks to maintain protections for delivery of 340B drugs to contract pharmacies." Intervenor Br. 56. But that is precisely the AG's interest in this litigation, as the AG itself describes in defending Act 358. Appellee Br. 13, 54-55. And LPCA still fails to articulate any connection between the Medicaid rule it complains of and the purported misalignment between its interests and the State's.

## CONCLUSION

The judgment of the district court should be reversed.

June 2, 2025

Ashley C. Parrish
John D. Shakow
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Suite 900
Washington, D.C. 20006
(202) 626-2627
aparrish@kslaw.com
jshakow@kslaw.com

Nicole Bronnimann
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
(713) 276-7402
nbronnimann@kslaw.com

Respectfully submitted,

*/s/ Matthew S. Owen*
Matthew S. Owen, P.C.
   *Counsel of Record*
Meredith M. Pohl
Lucas H. Funk
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 389-5000
matt.owen@kirkland.com
meredith.pohl@kirkland.com
lucas.funk@kirkland.com

Charles M. Jarrell (No. 17638)
GUGLIELMO, LOPEZ, TUTTLE,
HUNTER & JARRELL, L.L.P.
306 East North Street
P.O. Box 1329
Opelousas, LA 70571-1329
(337) 948-8201
cjarrell@glthj.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing brief has been served via the Court's CM/ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 2, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

_/s/ Matthew S. Owen_
Matthew S. Owen, P.C.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because it contains 6,497 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and Fifth Circuit Rule 32.2.

This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century font 14-point type face.

/s/ Matthew S. Owen
Matthew S. Owen, P.C.